# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

**RICHARD HIDALGO, #79-B-0148,**

                                **Plaintiff,**                 **01-CV-0057(Sr)**

**v.**

**HOPIN, Deputy Supt. Of Adm., et al.,**

                                **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. #64.


Plaintiff filed this *pro se* action on or about January 29, 2001 seeking relief pursuant to 42 U.S.C. § 1983.  Dkt. #1.  Thereafter, plaintiff filed an amended complaint (Dkt. #6) and a second amended complaint (Dkt. #8).  By Memorandum and Order filed December 3, 2001, then Senior United States District Judge John T. Elfvin ordered that the complaint "is deemed to consist of the amended complaint and the second amended complaint, taken together" (hereinafter referred to as "complaint").  Dkt. #9.  Presently pending before this Court is defendant William Hopkins' (identified by plaintiff as "W.J. Hopin") motion for partial summary judgment.  Dkt. #80.  As against defendant Hopkins only, plaintiff alleges that while he was incarcerated at the Elmira Correctional Facility ("Elmira"), defendant Hopkins denied him due process in connection with a Tier

III disciplinary hearing resulting from a December 20, 2000 incident.  As will be discussed in greater detail below, despite being given repeated opportunities to respond to defendant Hopkins' motion for partial summary judgment, plaintiff has failed to file a response to the pending motion.  For the following reasons, defendant Hopkins' motion for partial summary judgment is granted.

## PROCEDURAL BACKGROUND

### Original Complaint

Plaintiff, proceeding *pro se*, commenced this action on or about January 29, 2001.  Dkt. #1.  As originally commenced, the caption for this action was as follows, "*Richard Hidalgo, Paulette Carmona[1] v. M. Batley Off. Floyd Bennett, Supt., Hopin DSA; C. Shornstiemer, Officer, R. Wanwaring, Officer T. Carpenter, Officer Roy Willette, Sgt. Harvey, in Elmira Correctional Facility and Others.*"  *Id.*  The original complaint alleged that on December 20, 2000, Sergeant Harvey and Officers M. Batley, C. Shornstiemer, R. Manwaring, T. Carpenter and Roy Willette used excessive force against plaintiff Hidalgo when they broke up a fight between inmates.  *Id.*  In addition, plaintiff Hidalgo claims that he was denied medical treatment for his injuries, which included back pain, headaches from having his head "stomped on," "busted" lips, swollen leg, and a "torn out" fingernail, despite his repeated requests for treatment over a three-day period.  *Id.*  Plaintiff Hidalgo further claims that he was denied access to the

---

[1] A review of the documents contained in the Court file reveal that plaintiff, Paulette Carmona, is Richard Hidalgo's sister.

courts and that all of the defendants' actions were undertaken in retaliation for his grievances. *Id*.

## March 26, 2001 Decision and Order

By Decision and Order dated March 26, 2001, United States District Judge William M. Skretny dismissed Paulette Carmona as a plaintiff pursuant to 28 U.S.C. §§ 1915 and dismissed certain claims pursuant to 28 U.S.C. § 1915(e)(2)(B), unless plaintiff filed an amended complaint. Dkt. #5. In his Decision and Order, Judge Skretny found that plaintiff had sufficiently alleged an excessive force claim against defendants Harvey, Batley, Shornstiemer, Manwaring, Carpenter, and Willette. *Id*. at p.4. Judge Skretny found, however, that plaintiff's retaliation claim was too conclusory to survive and that claim was dismissed. *Id*. at pp.4-5. Judge Skretny further found that plaintiff failed to name any person who was personally responsible for the denial of medical treatment. *Id*. However, Judge Skretny did permit plaintiff to file an amended complaint, provided that plaintiff "identify the parties he seeks to hold responsible for the denial of medical care, ... fully describe the circumstances in which the denial arose, state whether he ever did receive treatment and if so, what kind of treatment." *Id*. at p.7.

Judge Skretny similarly found that plaintiff's claim relating to the disciplinary hearing was "too sparse to assess and thus subject to dismissal for failing to give notice to the defendant of the basis of the claim." *Id*. at pp.7-8. As with his

denial of medical treatment claim, Judge Skretny provided plaintiff the opportunity to amend this claim. *Id*. With respect to plaintiff's denial of access to the courts claim, Judge Skretny ordered that "unless plaintiff amends his complaint to show how a nonfrivolous legal claim had been frustrated or was impeded by defendant Hopin [Hopkins], the claim must be dismissed." *Id*. at p.9. Finally, plaintiff's claims of supervisory liability against defendant Bennett and Hopkins were equally insufficient and subject to dismissal unless plaintiff amends the complaint to demonstrate that they were personally involved in specific unconstitutional conduct against plaintiff. *Id*.

**March 2001 "Amended Complaints"**

Although it remains unclear from the docket sheet, it would appear as though two documents entitled "Amended Complaint" and filed on March 12 and 19, 2001, were not considered prior to Judge Skretny's March 26, 2001 Decision and Order. On or about March 12 and 19, 2001, plaintiff filed "amended complaints" (Dkt. ## 3 and 4), however, upon closer inspection, the two "amended complaints" are simply the continuation of the original complaint and purport to allege additional claims against additional defendants, including additional retaliation, Eighth Amendment and due process claims. Dkt. ##3 and 4. Specifically, the "amended complaint" filed on March 12, 2001 (Dkt. #4) purports to add Supt. M. McGinnis, Officer Turco, Officer W. McKlevis and Officer J. Baharth as defendants. The "amended complaint" filed on March 19, 2001 (Dkt. #3) purports to add Supt. M. McGinnis, Asst. Dep Supt. Weingartner and Hearing Officer Julie Wilson as defendants. In a Decision and Order

filed September 12, 2001, United States District Judge Richard J. Arcara noted,

"plaintiff filed two amended complaints (Docket Nos. 3,4) before the Amended

Complaint (Docket No. 6) addressed in this action. Dkt. #7. Plaintiff sent a letter to the

Court withdrawing those complaints from consideration. This means that plaintiff's next

amended complaint will be the Second Amended Complaint." Dkt. #7, p.2, n.2. Based

on the foregoing, this Court will not give any further consideration to those documents

filed under docket numbers 3 and 4.


**First Amended Complaint**

Plaintiff filed his first amended complaint on or about April 30, 2001. Dkt.

#6. In a Decision and Order filed September 12, 2001, Judge Arcara found that

plaintiff's excessive force claims against defendants M. Batley, C. Shornstiemer, R.

Manwaring and Roy Willette may proceed as pleaded. Dkt. #7, p.2. With respect to T.

Carpenter, identified in the caption of the amended complaint and alleged in the original

complaint as having been involved in the excessive force used against plaintiff on

December 20, 2000, plaintiff failed to include any allegations against Carpenter in his

amended complaint. Accordingly, Judge Arcara dismissed plaintiff's claims against

Carpenter without prejudice to plaintiff filing a second amended complaint by November

1, 2001. Id. at pp.2-3.


In addition to the dismissal of plaintiff's claims against the defendants in

their official capacities, Judge Arcara dismissed plaintiff's claim against defendant Floyd

Bennett, Superintendent, because plaintiff failed to demonstrate defendant Bennett's

personal involvement in the alleged constitutional deprivation. *Id*. at pp.3-4. Judge

Arcara further ordered that plaintiff's claims against defendant Hopkins concerning the

disciplinary hearing were not sufficiently pleaded. *Id*. at p.5. As set forth in the

Decision and Order, unless plaintiff alleged in a second amended complaint the length

of the sentence he received at the hearing and whether he appealed the determination

and if so, the result, plaintiff's due process claims against defendant Hopkins would be

dismissed with prejudice. *Id*. Finally, Judge Arcara found that plaintiff's denial of

medical care claim was not pleaded with sufficient specificity to proceed. *Id*.

Specifically, Judge Arcara ordered that plaintiff must provide more information about

this claim in his second amended complaint or the claims would be dismissed with

prejudice. *Id*. at pp.5-6. Plaintiff was ordered to file his second amended complaint by

November 1, 2001 or, as set forth in the Decision and Order, certain of plaintiff's claims

would be dismissed with prejudice. *Id*.


**<u>Second Amended Complaint</u>**

Consistent with Judge Arcara's September 12, 2001 Decision and

Order, plaintiff filed a second amended complaint on or about October 15, 2001. Dkt.

#8. Because the only defendant presently seeking relief from this Court is defendant

William Hopkins, only those allegations in the second amended complaint relating to

defendant Hopkins will be discussed herein. In the second amended complaint, plaintiff

alleges:

> Defendant W.J. Hopin Deputy Supt. of Administration in
> Elmira Corr. Fac is responsible for holding plaintiff's Tier III

hearing proceeding in an impartial and unbiased matter [sic].
Defendant W.J. Hopin denied plaintiff his right to a proper
assistant, the right to call witnesses which were vital to
plaintiff's defense (case). The witness that was denied is
Floyd G. Bennett who plaintiff had written letters requesting
mental health before the incident which resulted in plaintiff
being sent to Special Housing Unit. Defendant W.J. Hopin
denied plaintiff the opportunity to question Dr. Major about
plaintiff [sic] state of mind. Defendant W.J. Hopin further
demonstrated his partiality when he rendered a pre-
determination of guilt before plaintiff was allowed to finish
with his legal defense [sic] Defendant W.J. Hopin's
disciplinary decision was appeal [sic] to Donald Selsky on
January 14th 2001 and on March 14th 2001 the one year loss
of all privileges, one year of Special Housing Unit was
modified to 9 months. Defendant W.J. Hopin is suit [sic] in
his personal, individual, and official capacities for the
deprivation of plaintiff's due process right to a fair hearing;
the defendant W.J. Hopin deprived plaintiff his constitutional
right and the defendant W.J. Hopin had acted under the
color of state or territorial law.

Dkt. #8, ¶ 1. On or about December 3, 2001, in a Memorandum and Order, United

States District Judge John T. Elfvin ordered that "the Complaint is deemed to consist of

the amended complaint and the second amended complaint, taken together." Dkt. #9,

p.2. Thereafter, on March 18, 2002, defendant Hopkins filed an answer to the

complaint. Dkt. #20.


**Defendant Hopkins' Motion for Partial Summary Judgment**

In the years that followed, the parties engaged in discovery and on or

about December 14, 2007, defendant Hopkins filed the instant motion for partial

summary judgment. Dkt. #80. This Court issued a text scheduling order on December

14, 2007 which provided that plaintiff's response to defendant Hopkins' motion for

partial summary judgment shall be filed and served no later than February 8, 2008 and

reply papers, if any, shall be filed and served no later than February 29, 2008, at which time the motion would be taken under advisement without oral argument. Dkt. #85. On or about March 28, 2008, this Court issued an Order to Show Cause directing plaintiff to either respond to the motion for partial summary judgment or show cause in writing by April 29, 2008 why the matter should not be dismissed for failure to prosecute. Dkt. #86. Plaintiff did not comply with the Order to Show Cause as directed. However, in preparing a second Order to Show Cause, the Court discerned that the plaintiff may have been housed at the Auburn Correctional Facility and not the Southport Correctional Facility (the last known address for plaintiff at the time of the filing of the first Order to Show Cause). Dkt. #88. Accordingly, the second Order to Show Cause was sent to both Southport and Auburn Correctional Facilities.

Despite plaintiff's failure to comply with this Court's directives and to keep this Court informed of his current address, the plaintiff was afforded one last opportunity to either respond to the motion for partial summary judgment or show cause, in writing, no later than May 1, 2009 why this matter should not be dismissed for failure to prosecute. Dkt. #88. Notwithstanding the foregoing, plaintiff has failed to submit a response to defendant Hopkins' motion for partial summary judgment.

## **FACTUAL BACKGROUND**

During the time period alleged in the complaint, plaintiff was incarcerated at Elmira. Dkt. ## 1, 6, and 8. The only defendant presently seeking relief from this Court is defendant William Hopkins, accordingly, only those facts relating to defendant

Hopkins will be discussed herein. At all times relevant to plaintiff's allegations, defendant Hopkins was the Deputy Superintendent for Administration at Elmira. Dkt. #81, ¶ 2. On December 20, 2000, plaintiff was issued an Inmate Misbehavior Report relating to an incident that occurred that same day. Dkt. #81, p.13. The Inmate Misbehavior Report charging plaintiff with assault on an inmate 100.10, fighting 100.13, violent conduct 104.11 and possession of a weapon 113.10 provides the following description of the incident:

> On 12-20-00 at approx. 10:05 am I was letting inmate Hidalgo 79A0148 on to I-3 Company so he could move into 33 cell. Inmate Rouse 93A2893 who is the 3 Company porter was standing by 3-6 cell with his back to me and Hidalgo. When Hidalgo entered 3 Company he immediately attacked inmate Rouse by hitting him in the head and upper body with a can that was in a net bag that Hidalgo was carrying. As I approached the two inmates Hidalgo continued to assault Rouse by swinging the net bag can at Rouse. I used a bear hug on Hidalgo to prevent him from further striking Rouse. (Net-Bag-Can was placed in DSS locker 2-2).

*Id*. The Inmate Misbehavior Report was prepared by Officer R. Manwaring. *Id*. An Unusual Incident Report and a Use of Force Report were also completed. *Id*. at pp.7-9. As reflected on the Hearing Record Sheet, plaintiff was served with a copy of the Inmate Misbehavior Report on December 22, 2000. *Id*. at p.12. On December 22, 2000 and December 23, 2000, Tier Assistance Selection Forms were completed. *Id*. at pp.17-18. Although plaintiff refused to sign either form, taken together, both forms reveal that plaintiff was requesting a Spanish speaking assistant and that among those assistants requested by plaintiff was M. Ducot. *Id*. Additional documents contained in the complete hearing packet reveal that M. Ducot was assigned to assist plaintiff with

the Tier III hearing.  *Id*. at p.14.  Indeed, the Assistant Form states that M. Ducot initially

met with plaintiff on December 26, 2000 at 9:09 a.m.  *Id*.  The form further indicates that

plaintiff requested that Superintendent Bennett and Inmate Rouse, #93A2893 be

interviewed and that the plaintiff be provided with copies of the Unusual Incident Report

and the Use of Force Report.  *Id*.

As part of defendant Hopkins' duties and responsibilities, he may be

designated by the Superintendent to run Tier III[2] disciplinary hearings.  Dkt. #81, ¶ 3.

Consistent with these duties and responsibilities, defendant Hopkins was designated to

conduct plaintiff's Tier III disciplinary hearing concerning the December 20, 2000

Inmate Misbehavior Report.  Dkt. #81, p.29.  On December 27, 2000, defendant

Hopkins began the Tier III disciplinary hearing involving charges against plaintiff

stemming from the December 20, 2000 incident.  Dkt. #81, ¶ 5.

The Tier III disciplinary hearing was recorded on an audio tape in its

entirety, and that audio tape was subsequently transcribed and a copy of the transcript

has been provided to this Court in support of the motion for partial summary judgment.

Dkt. #81, ¶¶ 9-11; Dkt. #81, pp.32-55.  As reflected in the transcript, in preparation for

the Tier III disciplinary hearing, plaintiff acknowledged receipt of a copy of the formal

charges on December 22, 2000.  Dkt. #81, p.33.  In addition, plaintiff acknowledged

---

[2] "Tier III hearings concern the most serious violations and may result in unlimited SHU confinement (up to the length of the sentence) and recommended loss of 'good time' credits."  *Hynes v. Squillace*, 143 F.3d 653, 655 (2d Cir.), *cert denied,* 525 U.S. 907 (1998).

that he received all the documents he requested, specifically, the Use of Force Report and the Unusual Incident Report. Dkt. #81, ¶ 13; Dkt. #81, pp.33-34. At the outset of the hearing, plaintiff agreed that he was offered an assistant, that he had made three selections and that Officer Ducot served as his assistant and interviewed him on December 26, 2000. Dkt. #81, pp.33-35.

During the course of the hearing, plaintiff requested that the following witnesses be called to testify, inmates Clarence Rouse, Wilfredo Rivera, Luis Santiago, Mark Read and John Heneberry, as well as Dr. Major, a psychiatrist at Elmira and Floyd Bennett, Superintendent at Elmira. Dkt. #81, ¶¶ 14, 18; Dkt. #81, p.39. Inmates Clarence Rouse, Wilfredo Rivera, Luis Santiago and Mark Read all testified at the hearing. Dkt. #81, ¶ 15. Inmate John Heneberry refused to testify, stating that he had no knowledge of the incident. Dkt. #81, ¶ 16; Dkt. #81, p.21. According to defendant Hopkins, "[t]he inmates' testimony provided no information regarding the incident which was the subject of the hearing." Dkt. #81, ¶ 17. Plaintiff requested that Dr. Major testify concerning the "problems" plaintiff was having. Dkt. #81, ¶ 6; Dkt. #81, p.38.

In order to obtain Dr. Major's testimony, the disciplinary hearing was adjourned to January 4, 2001. Dkt. #81, ¶ 20. Dr. Major testified outside of plaintiff's presence and plaintiff was not permitted to listen to Dr. Major's testimony. *Id*. at ¶¶ 21-22. The transcript of Dr. Major's testimony has been provided to the Court for *in camera* review. At the conclusion of Dr. Major's testimony, defendant Hopkins concluded that the testimony contained "no information relevant to the hearing." *Id*. at

¶ 23.  At Dr. Major's request and consistent with Office of Mental Health and DOCS

procedures, her testimony was placed on a confidential tape.  Dkt. #81, p.11.  In

addition to the foregoing, both Correction Officer Manwaring and plaintiff testified at the

hearing.  Dkt. #81, ¶¶ 24 and 26.  Correction Officer Manwaring provided a detailed

account of the incident.  *Id*. at ¶ 25.  During his testimony, plaintiff admitted that he

struck another inmate and "that he struck the first blow."  *Id*. at ¶ 27.  Plaintiff further

testified that the other inmate involved in the incident never hit plaintiff and that he

never had a problem with the other inmate.  *Id*. at ¶ 28.


At the conclusion of the hearing, defendant Hopkins found plaintiff guilty

of all charges.  Dkt. #81, ¶ 29; Dkt. #81, p.6.  On the Hearing Disposition Rendered

Form, defendant Hopkins provided the following Statement of Evidence Relied Upon,

"CO Manwaring states in his 12/20/00 MBR and in his verbal testimony that you

assaulted Inmate Rouse 93A2893 with a mesh bag with a can in it on I-3 gallery.  You

have denied all charges."  Dkt. #81, p.10.  In his Reasons for Disposition, defendant

Hopkins stated: "Your witnesses failed to provide testimony that effectively counters

that of CO Manwaring or the other staff involved in this incident.  Furthermore, this type

of behavior will not be tolerated."  *Id*.  In addition to the foregoing, defendant Hopkins

explained in his affidavit that, "Manwaring's account of the incident clearly

demonstrated Hidalgo's guilt.  Not only did Hidalgo not provide me with any exculpatory

evidence, but as described above, he actually admitted several facts which

corroborated Manwaring's account."  Dkt. #81, ¶¶ 31-32.  In his affidavit submitted in

support of his motion for partial summary judgment, defendant Hopkins states,

"Imposed the following penalties: one year in the Special Housing Unit ("SHU"), one year loss of correspondence[3], packages and phones, and one year loss of good time; I recorded these penalties on a disposition sheet."  *Id*. at ¶ 33.

Following the hearing, plaintiff appealed the determination and Donald Selsky, Director, Special Housing/Inmate Disciplinary Program modified the penalties imposed on March 14, 2001.  Dkt. #81, p.30.  Specifically, the sentence was modified as follows: nine months SHU; nine months loss of packages; nine months loss of commissary; nine months loss of phone; nine months "rec'd" loss of good time.  *Id*.

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

---

[3] A review of the complete hearing packet, including the appeal determination and modification of the sentence imposed, suggests that the portion of the sentence relating to loss of correspondence was actually loss of commissary.  *See* Dkt. #81, pp. 6 and 30.

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment,

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

To state a cognizable § 1983 due process claim, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process. *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996); *Frazier v. Coughlin*, 81 F.3d 313, 316 (2d Cir. 1996). As a threshold

matter, defendant Hopkins argues that plaintiff's claims are barred by *Edward v. Balisok*, 520 U.S. 641 (1997). Specifically, defendant Hopkins asserts that plaintiff cannot sue for damages under 42 U.S.C. § 1983 unless and until he has invalidated Hopkins' disciplinary determination in another proceeding. Dkt. #84, pp.4-5. Second, defendant Hopkins maintains that plaintiff received all the process he was due during the course of the Tier III disciplinary hearing. Dkt. #84, pp.5-15. Alternatively, defendant Hopkins insists that he is entitled to qualified immunity. Because this Court agrees with defendant Hopkins that the plaintiff received all the process that he was due during the course of the Tier III disciplinary hearing, the Court need not address defendant Hopkins' other theories propounded in support of his motion for partial summary judgment.

**Liberty Interest**

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004), *quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995). In assessing whether the discipline imposed rises to this level, the Court of Appeals for the Second Circuit has directed the district courts to consider both the conditions of confinement and their duration, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Id., quoting Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999). In light of

this standard, the Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights" and has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Id*. at 64-65.

Notwithstanding the foregoing, courts in this Circuit "generally require that the duration of confinement be at least 100 days" to be categorized as constituting an "atypical and significant hardship." *Palmer v. Goss*, No. 02 Civ 5804(HB), 2003 WL 22327110, at * 6 (S.D.N.Y. Oct. 10, 2003), *aff'd, Palmer v. Richards*, 364 F.3d 60 (2d Cir. 2004); *Smith v. Taylor*, No. 03-0202, 2005 WL 2019547 (2d Cir. Aug. 23, 2005) (determining that 45 days disciplinary confinement in SHU, absent evidence of conditions more onerous than those generally present in the SHU, was insufficient to establish a protected property interest); *Sims v. Artuz*, 230 F.3d 14, 24 (2d Cir. 2003) (vacating dismissal of, *inter alia*, procedural due process claims, stating, during little more than a 4½ month period, Sims was sentenced to SHU for a total of nearly 3½ years); *Durran v. Selsky*, 251 F.Supp.2d 1208, 1214 (W.D.N.Y. 2003), *quoting, Tookes v. Artuz*, No. 00CIV4969, 2002 WL 1484391, at * 3 (S.D.N.Y. July 11, 2002) ("[c]ourts in this Circuit routinely hold that an inmate's confinement in special housing for 101 days or less, absent additional egregious circumstances, does not implicate a liberty interest."); *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000) (instructing district courts

to develop detailed factual records "in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days"); *cf. Prince v. Edwards*, No. 99CIV8650, 2000 WL 633382 (S.D.N.Y. May 17, 2000) (suggesting that any period of segregation of one year or less affords no protected liberty interest). Here, following the Tier III disciplinary hearing, defendant Hopkins imposed the following penalties: one year in SHU, one year loss of commissary, packages and phone and one year loss of good time.  The penalties were subsequently reduced to nine months.  Thus, there can be no dispute that plaintiff has demonstrated a protected liberty interest.  The issue that remains and that which will be addressed below, is whether plaintiff was deprived of that protected liberty interest without due process.


### Procedural Safeguards

In *Wolff v. McDonnell*, the Supreme Court enumerated certain procedural safeguards that must be afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure that the minimum requirements of procedural due process are satisfied.  418 U.S. 539 (1974).  Specifically, the Supreme Court identified the following procedures:  advance written notice of the claimed violation or charges; a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action taken; the opportunity for an inmate to call witnesses and present documentary evidence in his/her defense, provided that such a process would not jeopardize institutional safety.  *Id*. at 563-66.  Moreover, although not specifically required by *Wolff*, plaintiff was provided with an opportunity to appeal each

determination and he did in fact exercise that right to appeal on several occasions and
with respect to each appeal taken, enumerated specific grounds for his appeal.

Plaintiff claims that defendant Hopkins violated his Fourteenth
Amendment right to due process during the Tier III disciplinary hearing because he
was:  denied assistance to prepare for the hearing; denied production of certain
witnesses to testify at those hearings; erroneously found guilty of the charges; and was
prejudiced by defendant's bias and failure to be impartial.

### Employee Assistance

As discussed above, *Wolff* requires that an inmate be provided with at
least 24 hours advance written notice before the hearing "to inform [the inmate] of the
charges and to enable him to marshal the facts and prepare a defense."  *Wolff*, 418
U.S. at 563-64.   Institutional concerns have generally operated as a bar to inmates
obtaining retained or appointed counsel.  *Wolff*, 418 U.S. at 570; *Silva v. Casey*, 992
F.2d 20, 22 (2d Cir. 1993).  Inmates do, however, have a "limited" right to assistance.
*Silva*, 992 F.2d at 22.  Both the Second Circuit case law and DOCS' regulations provide
for an inmate to receive employee assistance when that inmate is charged with an
offense warranting SHU confinement.  *Silva*, 992 F.2d at 22; *Eng* v. Coughlin, 858 F.2d
889, 898 (2d Cir. 1988); 7 N.Y.C.R.R. § 251-4.1(b).  In the second amended complaint,
plaintiff complains that defendant Hopkins denied him his right to "a proper assistant."
Dkt. #8, ¶ 1.  For the following reasons, plaintiff's claim that he was denied "a proper

assistant" in connection with the Tier III disciplinary hearing which began on December 27, 2000 and concluded on January 4, 2001 must fail as a matter of law.

The undisputed evidence before this Court reveals that plaintiff was assigned one of the three Spanish-speaking assistants he had selected. Dkt. #81, pp.14, 17-18. Indeed, the Assistant Form states that the assistant assigned to plaintiff, M. Ducot, initially met with plaintiff on December 26, 2000 at 9:09 a.m. Dkt. #81, p.14. The form further indicates that plaintiff requested that Superintendent Bennett and Inmate Rouse, #93A2893 be interviewed and that the plaintiff be provided with copies of the Unusual Incident Report and the Use of Force Report. *Id.* In addition to the documentary evidence supplied to this Court in support of the motion for partial summary judgment, defendant Hopkins supplied excerpts of plaintiff's deposition testimony. With respect to plaintiff's allegation that he was denied an effective assistant at the hearing, defendant Hopkins cited the following excerpt from plaintiff's deposition:

> Q:    And when you say that Defendant Hopkins denied
>        you a proper assistant, what was wrong with the
>        assistant that you got?
>
> A:    The assistant never interviewed witnesses. He
>        pretended to interview witnesses but he never did and
>        he never completed his job as an assistant.
>
> Q:    Tell me everything; that's what we are here for. Tell
>        me everything he should have done that he didn't do.
>        Just tell me everything.
>
> A:    He's supposed to interview witnesses, bring me back
>        the information that I asked him for. If I got an
>        unusual incident report, the officers write an unusual

incident report, things that happened.  I'm going to get
some medical records because I was injured at that
time.  I wanted to get the medical records.  Anything
that was vital, that could help me in my hearing, in my
defense, to try to fight the hearing, he was supposed
to get; information that was vital for my defense, and
he didn't do that.

Dkt. #82, pp.10-11.


In addition to plaintiff's deposition testimony concerning the failure of his

assistant to interview witnesses, plaintiff further testified that the assistant failed to

supply him with the documents he had requested.  Specifically, plaintiff testified that he

had requested the unusual incident report and certain medical records from the

assistant prior to the hearing and did not receive them.  *Id*.  In sharp contrast to his

deposition testimony, plaintiff acknowledged receipt of the unusual incident report, the

use of force report and three memoranda during the disciplinary hearing.  Moreover,

plaintiff did not object during the disciplinary hearing concerning documents he now

claims he had requested and not received.  Thus, plaintiff's claim that he requested

certain documents from his assistant and did not receive those documents prior to the

hearing is belied by plaintiff's own statements made during the disciplinary hearing.


Notwithstanding the allegations in plaintiff's complaint and those

expressed by plaintiff during his deposition concerning the failure of his assistant to

interview witnesses, plaintiff testified that he suffered no harm from the assistant's

alleged failure to interview witnesses.  Dkt. #82, pp.11-14.  Specifically, plaintiff testified,

in part, "I did suffer no harm but he didn't follow chapter five, where it says an assistant is supposed to do his job. He didn't hurt me but he neglected to do his job. There could have been something vital for my defense in my hearing, but he failed to do his job as an assistant." *Id*. at pp.12-13. Thus, plaintiff's own testimony makes clear that the assistant's alleged failure to interview witnesses had no impact on plaintiff's hearing.

### Denial of Witness Testimony

In *Wolff v. McDonnell*, the Supreme Court of the United States determined that,

> [an] inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

418 U.S. at 566. In reaching this conclusion, the Court recognized that,

> [p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

*Id.* In exercising that discretion, prison officials must be able to,

> explain, in a limited manner, the reason why witnesses were not allowed to testify, . . . either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing. In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it 'later.'

*Ponte v. Real*, 471 U.S. 491, 497 (1985). A hearing officer may rationally exclude witnesses or documents when they would be irrelevant or unnecessary to a determination of the issues in the disciplinary hearing. *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999). The burden is on the prison official to demonstrate "the rationality of his position." *Fox v. Coughlin*, 893 F.2d 475, 478 (2d Cir. 1990).

Plaintiff claims that defendant Hopkins denied him witnesses during the disciplinary hearing. In his complaint plaintiff alleges, "[t]he witness that was denied is Floyd G. Bennett who plaintiff had written letters requesting mental health before the incident which resulted in plaintiff being sent to Special Housing Unit. Defendant W.J. Hopin denied plaintiff the opportunity to question Dr. Major about plaintiff [sic] state of mind." Dkt. #8, ¶1. During his deposition, plaintiff suggested that in addition to the several inmates who testified during the hearing, there was an additional inmate he wanted to have testify. However, plaintiff's testimony was vague about who the inmate was and what the inmate would have testified to. Dkt. #84, pp.10-11. With respect to Superintendent Floyd Bennett and Dr. Major, it remains unclear what plaintiff expected these two proposed witnesses would have added to his defense. Indeed, plaintiff's defense was vague, especially since during the hearing he admitted that he struck another inmate in response to his fear that the other inmate was going to strike him first. Additionally, during the disciplinary hearing, plaintiff claimed that he was having mental difficulties and that he had written to Superintendent Bennett and Dr. Major concerning these problems and requested to be seen by Dr. Major. Dkt. #81, p.38. During his deposition, plaintiff testified as follows:

Q:     You wanted to call Bennett as a witness and Hopkins
       didn't let you do that?

A:     Right.

Q:     Floyd G. Bennett was the superintendent?

A:     Right.

Q:     What did you want him to testify to?  If he would have
       come to the hearing, what would you have asked him
       about?

A:     Well, I was asking Floyd Bennett if I could get mental
       health assistance, because I was kind of frustrated
       from dealing with the officers over there.  And I wrote
       him several letters explaining my situation about this
       harassment and all that and the stress and all that.
       So I wanted – before this incident happened, the
       assault and everything – I had written him letters,
       letting him know that I needed to talk to somebody
       from mental health.  And I wanted him to be a
       witness, to testify that I did send him letters.  Probably
       if I had anyone in mental health, somebody I could
       have talked to, somebody to let my steam out, I
       probably would not have gotten in trouble.  But the
       guy never called him as a witness.

Q:     How would that have helped you with a hearing,
       though?  If they were charging you with fighting
       another inmate, how would Bennett have helped you
       as a witness?

A:     No, I just want him to testify to the fact that I had
       written him letters, letting him know that I need mental
       health, need somebody to talk to.  I wasn't going
       crazy or nothing, but I wanted somebody to talk to to
       let some steam out and I had written him several
       letters.  So I had to show that I had written to him.  I
       wanted him as a witness. He denied that.  He said,
       no, that he ain't got nothing to do with it because he
       did not see the incident.  I'm saying, if I would have
       gotten a mental health, somebody to talk to, a social
       worker of somebody, I would probably have been

> able to express my feelings and let some steam out and I probably would not have gotten in trouble.

> Q:    So the incident probably would never have occurred?

> A:    Yes.

Dkt. #82, pp.16-18.  In support of his motion for partial summary judgment, defendant Hopkins argues that Superintendent Bennett's proposed testimony concerning letters written by plaintiff and "whether or not plaintiff might have acted differently in different circumstances is wholly irrelevant."  Dkt. #84, p.13.  Thus, defendant Hopkins concludes that it was "not unreasonable for [him] to decline to call Bennett."  *Id*.

Finally, plaintiff objected to the fact that Dr. Major testified outside of plaintiff's presence, that plaintiff was not provided with an opportunity to cross-examine Dr. Major and that upon her request and consistent with Office of Mental Health and DOCS policy, her testimony remained confidential and was placed on a confidential tape.  As set forth in his affidavit submitted in support of his motion for partial summary judgment, defendant Hopkins concluded that Dr. Major's testimony "contained no information relevant to the hearing."  Dkt. #81, ¶ 23.  Moreover, plaintiff conceded during his deposition that he did not timely object to the manner in which Dr. Major's testimony was taken.  Dkt. #84, p.15.  Notwithstanding the foregoing, defendant Hopkins maintains that plaintiff's inability to hear Dr. Major's testimony and to cross-examine her was not constitutionally significant because plaintiff "has no right to confrontation or cross-examination at a prison disciplinary hearing."  *Id*., *citing*, *Baxter v. Palmigiano*, 425 U.S. 308, 322 (1978).

An inmate does not possess a constitutional right to confront or cross-examine witnesses in prison disciplinary hearings. *Wolff*, 418 U.S. at 567-68; *Kalwasinski v. Morse,* 201 F.3d 103, 109 (2d Cir 1999); *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993). Thus, "[p]rison inmates do not possess a constitutional right[4] to be present during the testimony of witnesses during a disciplinary proceeding." *Francis v. Coughlin*, 891 F.2d 43, 48 (2d Cir. 1989); *Bogle v. Murphy*, No. 98-CV-6473 CJS, 2003 WL 22384792 (W.D.N.Y. Sep. 9, 2003) (plaintiff's ejection from his disciplinary hearing was not a due process violation). In accordance with the principle set forth in *Wolff v. McDonnell* that a hearing officer may refuse to call witnesses on the basis of "irrelevance, lack of necessity, or the hazards presented in individual cases," this Court agrees with defendant Hopkins' determination that both Superintendent Bennett's and Dr. Major's proposed testimony would have been irrelevant to the issues presented in the hearing. Moreover, this Court further concludes that the record contains more than sufficient evidence to support defendant Hopkins' finding of plaintiff's guilt, including, but not limited to, Officer Manwaring's testimony and plaintiff's own admissions made during his testimony at the disciplinary hearing.

---

[4] Although N.Y.Comp.Codes R. & Regs. tit. 7, § 254.5 affords inmates the right to "be present at the hearing unless he refuses to attend, or is excluded for reason of institutional safety or correctional goals," state rules and regulations do not necessarily support viable due process claims under § 1983. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984); *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir. 1995); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir.), *cert. denied,* 484 U.S. 896 (1987); *Dawes v. Leonardo*, 885 F.Supp. 375, 377-78 (N.D.N.Y.), *aff'd* 71 F.3d 406 (1995).

**Impartiality of Hearing Officer**

"An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996); *see Wolff v. McDonnell* 418 U.S. 539, 570-71 (1974); *Russell v. Selsky*, 35 F.3d 55, 59 (2d Cir. 1994). An impartial hearing officer "is one who, *inter alia*, does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir.1990); *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard").

It is well recognized, however, "that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen*, 100 F.3d at 259; *see Francis*, 891 F.2d at 46 ("Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process."). For example, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Allen,* 100 F.3d at 259; *see Francis*, 891 F.2d at 46. A hearing officer may satisfy the standard of impartiality if there is "some evidence in the record" to support the findings of the hearing. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

Plaintiff alleges that defendant Hopkins failed to conduct the Tier III disciplinary hearing in an unbiased manner. Specifically, plaintiff alleges that, "[d]efendant W.J. Hopin further demonstrated his partiality when he rendered a pre-determination of guilt before plaintiff was allowed to finish with his legal defense [sic]." Dkt. #8, ¶ 1. At the conclusion of the disciplinary hearing, plaintiff objected stating "I want to object, I want to object to the fact that theres [sic] a predetermination of guilty [sic] and [sic] when you first came into the room." Dkt. #81, p.51. In addition, plaintiff argued that the hearing was not complete because all the testimony had not been completed. *Id*. Contrary to plaintiff's assertions, defendant Hopkins concluded that all the testimony was complete. *Id*. Indeed, the transcript of the disciplinary hearing reveals that in addition to plaintiff, at plaintiff's request, four inmates testified, as well as Officer Manwaring who testified at defendant Hopkins' request. Moreover, only one of plaintiff's inmate witnesses did not testify and that inmate refused to testify on the grounds that he had no knowledge of the incident.

Plaintiff's argument that defendant Hopkins had predetermined plaintiff's guilt and that all the testimony had not been received prior to the issuance of defendant Hopkins' decision is belied by the evidence in the record before this Court. The disciplinary hearing spanned over two days to allow for each of plaintiff's witnesses to testify, including the confidential testimony of Dr. Major. In addition to all of plaintiff's witnesses, Officer Manwaring also testified during the hearing. Finally, prior to rendering his decision, defendant Hopkins heard plaintiff's testimony. Specifically, plaintiff admitted that he struck another inmate, that he "struck the first blow" and that

the other inmate never hit plaintiff.  Dkt. #81, ¶¶ 26-28.  According to defendant

Hopkins, plaintiff's admissions were corroborated by Officer Manwaring's account of the

incident.  *Id*. at ¶ 32.


As reflected in the disciplinary hearing transcript and memorialized on the

Superintendent Hearing Disposition Rendered Forms, defendant Hopkins permitted

plaintiff to voice his objections during the hearing, afforded plaintiff the opportunity to

testify or to present evidence in his defense, and set forth sufficient evidence in his

disposition to support his determination of guilt.  Specifically, defendant Hopkins states

that he relied upon Officer Manwaring's statements in his December 20, 2000

Misbehavior Report and in his verbal testimony that "[plaintiff] assaulted Inmate Rouse

93A2893 with a mesh bag with a can in it on I-3 gallery. [Plaintiff has] denied all

charges."  Dkt. #81, p.10.  Furthermore, defendant Hopkins stated the following

reasons for his disposition, "[Plaintiff's] witnesses failed to provide testimony that

effectively counters that of CO Manwaring or the other staff involved in this incident.

Furthermore, this type of behavior will not be tolerated."  *Id*.  As reflected in the

transcript of the disciplinary hearing, defendant Hopkins imposed the following penalty,

"one year SHU, one year lose [sic] of commissary, packages, phones and one year

recommended lose [sic] of good time..."  Dkt. #81, p.52.  Plaintiff appealed defendant

Hopkins' determination and Donald Selsky, Director, Special Housing/Inmate Discipline

modified the penalty imposed because the disposition does not justify the penalty

imposed.  Dkt. #81, pp.30-31.  Director Selsky modified the penalty as follows: nine

months SHU; nine months loss of packages; nine months loss of commissary; nine months loss of phone; and nine months "rec'd" loss of good time. *Id*. at p.30.

Here, plaintiff's bare, conclusory allegations of bias and prejudgment, without more, are insufficient to defeat defendant's motion for partial summary judgment. As reflected in the Hearing Disposition Sheet and hearing transcript, defendant Hopkins based his determination on the Misbehavior Report, the testimony of plaintiff, testimony of witnesses present during the incident, and the documentary evidence. Additionally, as noted above, defendant Hopkins' decision was based, in part, on plaintiff's admissions made during the hearing. Thus, the record before this Court unequivocally establishes that defendant Hopkins was neither biased nor prejudged the evidence. To the contrary, defendant Hopkins based his finding of guilt on the credible evidence presented during the hearing and made an objectively reasonable determination based on the evidence. Thus, the Court agrees with defendant Hopkins that plaintiff has failed to meet his burden of demonstrating that defendant Hopkins was so partial so as to violate plaintiff's due process rights.

### Modification of Penalty Imposed Not
### Indicative of Due Process Violation

Plaintiff has alleged that he was denied due process by defendant Hopkins and in his complaint, plaintiff implies that the alleged denial of due process was as a result of the subsequent modification of the penalty by Donald Selsky. Dkt. #8. Specifically, plaintiff alleges, "[d]efendant W.J. Hopin's disciplinary decision was appeal

[sic] to Donald Selsky on January 14th 2001 and on March 14th 2001 the one year loss of all privileges, one year of Special Housing Unit was modified to 9 months." Dkt. #8, ¶ 1. The disciplinary hearing, discussed at length above, spanned over two days and included the testimony of six witnesses. Following the hearing, defendant Hopkins found plaintiff guilty of violating Rules 104.11 (violent conduct), 100.10 (assault on inmate), 100.13 (fighting) and 113.10 (weapon) and imposed a penalty of one year SHU confinement, one year loss of commissary, packages, phones and one year recommended loss of good time. Dkt. #81, p.52. Thereafter, plaintiff exercised his right to appeal and Donald Selsky modified the term of the penalty imposed from one year to nine months. Dkt. #81, pp.30-31. Notably, the penalty was modified on March 14, 2001 just over two months after the initial penalty was imposed. *Id*. Thus, even though the term of plaintiff's penalty began on December 20, 2000, as of March 14, 2001, plaintiff had not served in excess of nine months of the penalty imposed. Without more, plaintiff's suggestion that Donald Selsky's modification of the term of the penalty imposed is evidence of an underlying due process violation by defendant Hopkins is insufficient to defeat defendant Hopkins' motion for partial summary judgment.

## CONCLUSION

For the foregoing reasons, defendant Hopkins' motion for partial summary judgment (Dkt. #80) is **GRANTED**.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

DATED: Buffalo, New York
December 9, 2009

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**